UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| TIM FARRELL and NANCY FARRELL, husband and wife,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA, acting through the Rural Housing Service, and agency of the United States Department of Agriculture,<br><br>　　　　Defendant. | Civil No. 2:12-cv-265-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS**<br><br>**(Docket No. 21)** |

Currently pending before the Court is Defendant's Motion to Dismiss (Docket No. 21). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND[1]

In 2009, Defendant United States of America, acting through the Rural Housing Service, an agency of the United States Department of Agriculture ("USDA"), (collectively "Defendant") made a home construction loan[2] to Plaintiffs Tim and Nancy Farrell ("Plaintiffs"). *See* Pls.' Second Am. Verified Compl., ¶ 5 (Docket No. 15). Plaintiffs developed a set of specifications for a house and contracted with Revelstoke Custom Homes, LLC ("Revelstoke") to construct their home. *See id*. Revelstoke requested approval from Defendant to participate in the

---

[1] For the purposes of Defendant's Motion to Dismiss only, this "Background" section accepts the allegations raised in Plaintiffs' Complaint as true.

[2] Defendant has a program to provide home construction loans to individuals who are unable to obtain private market financing (the "Program"). *See* Pls.' Second Am. Verified Compl., ¶ 3 (Docket No. 15).

**MEMORANDUM DECISION AND ORDER - 1**

Program; in turn, Defendant approved Revelstoke as a contractor. *See id*. at ¶ 6. According to Plaintiffs, however, Revelstoke was not a qualified builder and was not financially sound. *See id*. at ¶ 7.

Construction occurred from March 29, 2010 to June 21, 2010. *See id*. at ¶ 9. During this time, Plaintiffs claim that Revelstoke failed to perform in a workmanlike manner in a number of respects. *See id*. at ¶ 8. Still, Defendant advanced funds to Revelstoke. *See id*. at ¶¶ 8-9. Eventually, Defendant demanded that Revelstoke remedy the construction defects before it would advance any additional funds. *See id*. at ¶ 10. Revelstoke refused to remedy the defects and abandoned the job in July 2010. *See id*. at ¶ 11.

Revelstoke then filed a lien against the property for approximately $80,000. *See id*. Subcontractors followed suit, filing a lien against the property for approximately $54,000. *See id*. After these liens were filed, Defendant refused to provide the funds to finish the construction of Plaintiffs' house. *See id*. at ¶ 12.

In October 2010, Revelstoke filed suit in Idaho state court, foreclosing on its lien and naming all other lien holders. *See id*. at ¶ 13. Following that action's December 2010 removal to this District, U.S. District Judge B. Lynn Winmill dismissed Revelstoke's claims in December 2011 (Revelstoke failed to notify the Court how and by whom it would be represented within 21 days after its original attorney withdrew) without the Court addressing its substantive merits (including Defendant's then-pending motion for summary judgment speaking to lien priorities between Defendant, Revelstoke, and the subcontractors). *See Revelstoke Custom Homes, LLC v. Tim and Nancy Farrell, et al.*, Case No. 2:10-cv-00599-BLW at Docket Nos. 40 & 47; *see also See* Pls.' Second Am. Verified Compl., ¶ 20 (Docket No. 15).

**MEMORANDUM DECISION AND ORDER - 2**

In June 2011, Plaintiffs submitted a Documentation of Construction Complaint/Request for Compensation for Construction Defects to the USDA, demanding that Defendant remedy Revelstoke's above-referenced construction defects. *See* Pls.' Second Am. Verified Compl., ¶ 14 (Docket No. 15). In an October 2011 administrative mediation of that complaint, the parties resolved their dispute, agreeing in part that: (1) the issue confronting the USDA and Plaintiffs will be tabled until the question of lien holders is determined by the Court, and (2) should the USDA be determined to be in a first position, the USDA will release the remaining funds available (approximately $68,000) to complete the construction of Plaintiffs' home. *See id*. at ¶¶ 15-17.

In November 2011, Plaintiffs submitted to the USDA a Tort Claim for Damage, contending that (1) Revelstoke never should have been qualified to do the work and (2) the USDA improperly managed the construction loan and inspection and payment processes. *See id*. at ¶ 19. In December 2011, following Judge Winmill's dismissal of Revelstoke's claims, Plaintiffs requested that Defendant begin the process of completing their home, presumably believing that the USDA was determined to be in "first position" in the foreclosure action, consistent with the October 2011 mediation's terms. *See id*. at ¶ 21.

In early 2012, Defendant informed Plaintiffs that it would not forward the remaining funds to complete the construction of Plaintiffs' home. *See id*. at ¶¶ 22-26. This action followed. Through their Second Amended Complaint and Request for Preliminary Injunction, Plaintiffs assert four causes of action against Defendant: (1) breach of the parties' mediated settlement agreement; (2) breach of the lending agreement; (3) negligence; and (4) negligent infliction of emotional distress. *See id*. at ¶¶ 27-42. Plaintiffs' also sought entry of a preliminary

**MEMORANDUM DECISION AND ORDER - 3**

injunction, "requiring Defendant to release the remaining construction funds to allow [them] to complete their home to the point that would allow [them] to occupy the same . . . ." *See id*. at ¶ 2, p. 8.

Now, Defendant moves to dismiss Plaintiffs' claims against it, arguing that "[t]his Court lacks subject-matter jurisdiction over this case because it is based on contracts." *See* Def.'s Mem. in Supp. of Mot. to Dismiss, p. 1 (Docket No. 21, Att. 1). Specifically, Defendant argues that each of Plaintiffs' claims sound in contract and that, pursuant to the Tucker Act, claims based on a contract with the United States are enforceable *only* in the United States Court of Federal Claims. *See id*. at pp. 3-7.[3]

## II. DISCUSSION

The Tucker Act controls any action against the United States which is "at its essence" a contract claim. *See* 28 U.S.C. § 1491. District Courts and the Court of Federal Claims have concurrent jurisdiction over Tucker Act claims not exceeding $10,000; however, where a claim is for an amount in excess of $10,000, the Court of Federal Claims has *exclusive* jurisdiction. Here, Defendant moves for dismissal based on lack of subject-matter jurisdiction, arguing that Plaintiffs' claims are more accurately characterized as contract claims exceeding $10,000 – not tort claims – and that jurisdiction therefore lies in the Court of Federal Claims, not this Court.

The decision on Defendant's Motion to Dismiss turns upon whether Plaintiffs' claims (stemming from Defendant's alleged refusal to release construction funds pursuant to the parties'

---

[3] After Defendant filed its Motion to Dismiss, Plaintiffs filed a "Notice of Dismissal," attempting to dismiss Count Two (breach of the lending agreement) of their Second Amended Verified Complaint. *See* Pls.' Not. of Dismissal (Docket No. 24). Through this Memorandum Decision and Order, the Court makes no determination on whether such a dismissal was procedurally proper. Suffice it to say, Defendant does not object to the dismissal of Plaintiffs' second cause of action..

**MEMORANDUM DECISION AND ORDER - 4**

October 2011 mediated settlement agreement, and also couched in terms of negligence and negligent infliction of emotional distress) are sufficiently tied to a contract between the parties such that it may be said that such claims are "in substance a breach of contract claim and only 'incidentally and conceptually a tort.'" *Darko v. United States*, 646 F. Supp. 223, 227 (D. Mont. 1986) (quoting *Woodbury v. United States*, 313 F.2d 291, 295 (9th Cir. 1963)).  With this in mind, if a claim is "concerned solely with rights created within the contractual relationship and has nothing to do with duties arising independently of the contract[,] the claim is founded upon a contract with the United States and is therefore within the Tucker Act and subject to its restrictions on relief." *North Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994) (citing *North Side Lumber v. Block*, 753 F.2d 1482, 1486 (9th Cir. 1985)); *see also Megapulse v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982) (whether action is founded upon contract for purposes of Tucker Act "depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate).").

     As currently framed, Plaintiffs' Complaint alleges that Defendant (1) failed to comply with the terms of the October 2011 mediated settlement agreement (first cause of action), and (2) was negligent in (a) qualifying construction professionals for the Program, (b) monitoring the construction of Plaintiffs' house, and (c) administering the Plaintiffs' construction loan (third and fourth causes of action).  There is no question that Plaintiffs' first cause of action is a contract claim against Defendant.  That is, according to Plaintiffs, Defendant's refusal to release the remaining funds available (approximately $68,000) to complete the construction of Plaintiffs' house represents a breach of the parties' October 2011 mediated settlement agreement, given Judge Winmill's dismissal of Revelstoke's claims in a related action involving the priority of construction and loan liens against the real property and its improvements.

**MEMORANDUM DECISION AND ORDER - 5**

Plaintiffs contend that the related action decided that Defendant's lien was superior to all other liens, and that fact somehow transmutes the nature of Plaintiffs' first cause of action in this case. The Court is not so persuaded – it is unmistakable that, as pleaded, Plaintiffs' first cause of action is one sounding in contract – specifically a breach of contract claim.  *See, e.g.*, Pls.' Second Am. Verified Compl., ¶¶ 22-23, 28 (Docket No. 15) ("On January 17, 2012, Defendant informed the Farrell's that it would not honor its commitments set forth in the mediation agreement notwithstanding the fact that it had been determined that Defendant's deed of trust was superior to that of Revelstoke's.  On January 30, 2012, the Farrells informed the Defendant that if it did not honor its commitment set forth in the parties' mediation agreement, suit would be immediately filed. . . . .  The Defendant's conduct of refusing to release the remaining construction funds is a breach of the parties' mediated settlement agreement").

Plaintiffs also contend that the instant dispute arises from a federal lending regulation. However, whatever role the lending regulation may have in the original dispute between the parties, that particular issue was resolved by the October 2011 mediation agreement that Plaintiffs now contend Defendant failed to uphold.  Thus, the nature of the first cause of action in this lawsuit remains one of breach of contract.

Accordingly, this Court does not have subject-matter jurisdiction over Plaintiffs' first cause of action.  Defendant's Motion to Dismiss is granted in this respect.

Plaintiffs' third and fourth causes of action are no different.  Although negligence and negligent infliction of emotional distress claims are unquestionably tort claims on their face, the relief sought by Plaintiffs in such counts is necessarily premised upon Defendants' alleged mishandling of the construction loan contract – the "lending agreement" referenced in Plaintiffs' since-dismissed second cause of action.  *See id*. at ¶¶ 40 ("Defendant failed to use reasonable

care in the administration of the Farrell's Project construction loan . . . ."). In other words, but for the construction loan contract/lending agreement, there would be no basis for these tort claims to exist. To hold otherwise would nonsensically permit a party to first bring tort claims in a federal district court, only to later bring related contract claims in the Court of Federal Claims. As a matter of consistency, efficiency, and compliance with the Tucker Act's mandate, the more sensible approach in such instances is to identify where such claims are tethered to a contract claim (even if a contract claim is not raised) and require that all such claims be resolved in the Court of Federal Claims. That is exactly the circumstance here. Simply put, the nature of Plaintiffs' third and fourth causes of action is such that there is no duty absent the lending agreement. Because these causes of action ultimately are woven into and derive from the same facts as the breach of contract claim, this Court does not have subject-matter jurisdiction over them. Defendant's Motion to Dismiss is granted in this respect.

### III.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (Docket No. 21) is GRANTED and the action is dismissed, without prejudice. Correspondingly, Plaintiffs' Application for Preliminary Injunction (Docket No. 16) is DENIED AS MOOT.

DATED:  **December 11, 2012**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 7**